# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA ALEXANDER, by her guardians and next friends FRANCES ALEXANDER and MARY ALEXANDER, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:2005-419 |
| v. | ) ) ) | JUDGE GIBSON |
| EDWARD G. RENDELL, as Governor of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Defendants' Motion to Dismiss as Moot or, in the alternative, Pre-Discovery Motion for Summary Judgment (Document No. 97). The Plaintiffs oppose this motion arguing that this matter is not moot. The Court will grant the motion for summary judgment.

## FACTUAL/ PROCEDURAL BACKGROUND

The Plaintiff-residents are former residents of the Altoona Center, a former state-operated intermediate care facility for the mentally retarded in downtown Altoona, Pennsylvania. The remaining Plaintiffs are recognized decision-makers or legal guardians for the Plaintiff-residents. The Plaintiff-residents' medical and mental conditions are sufficiently described in this Court's findings of fact and conclusions of law (*see* Document No. 25), but it suffices to state that the Plaintiff-residents' mental capacities are not above those of two year-old children. In late 2004, the Defendants, who are

government officials for the Commonwealth of Pennsylvania, announced the Commonwealth's intention to close the Altoona Center and relocate its residents. The Plaintiffs filed this civil action and eventually a motion for a preliminary injunction seeking to prevent the Defendants from transferring the residents of the Altoona Center to other care facilities without the consent of each Plaintiff-resident's family or legal guardian. The Plaintiff-residents' concern was that no other institution or community-based care facility would be as integrated as the Altoona Center and placement of them into that community-based care may result in abuse, neglect or in the worst case, death. In its order resolving the Plaintiffs' Motion for Preliminary Injunction (Document No. 15), the Court adopted a protocol approved by the parties that set forth actions to be taken by the parties with respect to the Plaintiff-residents that would allow their transfer from the Altoona Center, their placement in the Ebensburg Center or a community-based care facility of their choice, and allow the Defendants to eventually close the Altoona Center. The Altoona Center has been closed as such a facility since May 2006. *See* Defendant's Concise Statement of Undisputed Material Facts ("Defendant's CSUMF")(Document No. 98). The Memorandum Opinion and Order of Court dated January 30, 2006 (Document No. 25) set forth this protocol and the Court subsequently clarified this protocol in a Memorandum Opinion and Order dated March 9, 2006 (Document No. 42) in response to a motion by the Defendants (*see* Document No. 38). The protocol permitted the Plaintiff-residents' guardians or decision-makers to choose the placement for each resident after the individual resident's treatment professionals evaluated and reported on the resident's condition in an individual support plan ("ISP"). For the benefit of the decision-makers, the ISPs were to include recommendations for an appropriate placement of the resident by a qualified mental health professional.

2

In addition to class-action allegations, the Plaintiffs' Complaint set forth four causes of action: a claimed violation of the Plaintiff-residents' rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act unless the Plaintiff-residents are transferred to a placement outside of Altoona Center that is no less integrated than Altoona Center and only after such placement is permitted by the residents' ISP and consent of the residents' guardians or decision-makers is obtained; second, that evaluations of the Plaintiff-residents be completed and the choice of placement in "at a state-run ICF/MR" facility or another facility be made only if is consistent with the ISP and with consent of the Plaintiff-residents' decision-makers (Complaint (Document No. 1), ¶ 56); third, a due process claim based upon a concern that the residents' transfer by order of the Defendants from the Altoona Center to community-based facilities would result in possible injury or death; and fourth, the appointment of guardians "for purposes of participation in this action." Complaint, ¶ 65.

## ANALYSIS

Before proceeding further, the Court must recognize the proper standard for analysis. As the title to the Defendants' motion indicates, they seek dismissal of the Plaintiffs' claims because of mootness or alternatively summary judgment. The Defendants have submitted a Concise Statement of Undisputed Material Facts consisting of five proposed facts:

1. The last resident of Altoona Center left in [sic] Altoona Center May, 2006. 2. The last community placement of an Altoona Center resident (after interim placement at Ebensburg Center) was in December, 2006. 3. All choices for either state center placement or community placement made by guardians or other legal representatives of plaintiffs were honored. 4. No Altoona Center resident has asked to return to Ebensburg Center. 5. Altoona Center was leased to a private entity in May, 2007.

These five proposed facts were submitted on September 4, 2007. All five are based upon the Affidavit

3

of David Fulton, the "official-in-charge of Ebensburg Center", which accompanies the Defendants' motion, brief and statement of facts. Consistent with Federal Rule of Civil Procedure 12(d), the Court's consideration of Mr. Fulton's affidavit will most certainly convert any motion to dismiss to a motion for summary judgment because of a consideration of matters outside of the pleadings. *See also Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71, 74-75 (3d Cir. 1991) and *Rose v. Bartle*, 871 F.2d 331, 339-340 (3d Cir. 1989). The Plaintiffs have opposed the Defendants' motion by submitting with their brief a Concise Statement of Undisputed Material Facts (Document No. 108) consistent with Local Rule 56.1 governing summary judgment motion practice. Clearly the Plaintiffs were aware and proceeded by taking the opportunity to respond in a fashion that recognized that the motion would be interpreted as a motion for summary judgment in accordance with Federal Rule of Civil Procedure 12(d). Thus any notice by the Court to the parties that it will treat the Defendants' motion as one requesting summary judgment is unnecessary. *See DL Resources, Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 223 (3d Cir. 2007)(requiring district courts to provide notice to parties before granting summary judgment *sua sponte*).

Federal Rule of Civil Procedure 56(c) requires that "[summary] judgment...should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable

4

> inferences must be drawn in favor of the non-movant. *Oritani [Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638].

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Proceeding with the understanding that the present motion is one for summary judgment, the Court considers the Defendants' and the Plaintiffs' proposed undisputed material facts together. The Plaintiffs' proposed facts include their verbatim adoption of the Court's findings of fact set forth in its January 30, 2006 Order denying the Plaintiffs' motion for preliminary injunction. The Court may judicially notice such a previous order, but it is prohibited from considering such facts unless it converts the motion to dismiss to a motion for summary judgment. *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). Having already converted the motion into one for summary judgment, the Court considers the facts it has previously found and concludes that they are material and undisputed. Finally, the Plaintiffs in their proposed fact number 23 recognize that the Defendants' proposed fact 2 is correct and in proposed facts 24 and 25 they offer that there is an eighteen month period (that ended in June

2008) in which transfer back into a state-run ICF/MR will be permitted for those who chose community placements. The Court adopts these three proposed material facts as well. Considering this record of undisputed facts, the Court turns to the question of mootness.

In a recent opinion, the Court of Appeals for the Third Circuit observed that a party seeking to establish mootness carries a "heavy [burden]". *DeJohn v. Temple University*, 537 F.3d 301, 309 (3d Cir. 2008). The *DeJohn* court, citing the Supreme Court in *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), also recognized that a matter becomes moot when "(1) it can be said with assurance that 'there is no reasonable expectation...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *DeJohn* at 309. The *DeJohn* opinion then proceeded to compare other instances of the cessation of challenged conduct and the application of the principles of mootness. *DeJohn* itself reviewed a policy enforced by Temple University on the matter of gender discrimination and its subsequent cessation of that policy before completion of the litigation and in spite of the university's continued support for the "constitutionality of" and "need for" the former policy. *DeJohn* at 309. The Third Circuit concluded that the matter was not moot because it was possible for the university to reinstate the policy after conclusion of the litigation. *DeJohn* at 310.

In contrast, the Court believes that the instant matter is more akin to the Eleventh Circuit case of *Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627 (11th Cir. 1998). The Third Circuit found that *Jews for Jesus* reflected an instance where an airport policy prohibiting distribution of literature was reversed after the airport authority's "substantial deliberation" and continued application of the new policy for three years. *DeJohn* at 311 (citing *Jews for Jesus* at 629).

6

In the case *sub judice*, the Plaintiffs' allegations are based upon the closure of the Altoona Center. There is no dispute that the Altoona Center is no longer in operation and all of its former Plaintiff-residents reside in the Ebensburg Center (or another state-operated ICF/MR facility) or a community-based care facility. The Plaintiff-residents' transfers occurred only after the completion of the ISPs which detail, *inter alia*, the Plaintiff-residents' medical needs and functionality. Any transfers of Plaintiff-residents from the Altoona Center were made consistent with the information set forth in these ISPs and the decisions for transfer of the Plaintiff-residents were confirmed by the respective decision-makers or guardians. For those Plaintiff-residents without legal guardians, the Defendants recognized the decisions of family members or the court-appointed guardian *ad litem*, Thomas Burk, M.D. in processing these Altoona Center residents to their subsequent placements. The placements have been completed in accordance with the wishes of the guardians and decision-makers which was the relief that was requested under the first and second causes of action. The Plaintiff-residents have been evaluated and individual ISPs created for each of them-the relief requested in the Plaintiffs' second cause of action. Some of the Plaintiff-residents no longer reside in a state-run ICF/MR facility. The Court Order of January 30, 2006 adopted the parties' agreement that an eighteen month standby period be implemented, that permitted any Plaintiff-resident transferred to a community-based care facility to return to a state-run ICF/MR facility if such a transfer was desired. It is undisputed that this period expired in June 2008. Now, in January 2009, the Court considers the Defendants' motion for summary judgment after the Defendants' January 2006 agreement with the Plaintiffs was memorialized and enforced by the Court. The Plaintiffs are correct that the Defendants' actions were taken pursuant to their own decision, but the Defendants cannot annul the fact that ISPs were completed for the Plaintiff-

7

residents in 2006 prior to their transfers from the Altoona Center. The decisions for transfer made by the recognized decision-makers of the Plaintiff-residents also cannot be undone. The eighteen month standby period is complete. The Plaintiff-residents who sought to avoid community placements for fear of abuse, neglect, injury or death had the opportunity to avoid such placements and their decisions for placement into a state-operated ICF/MR facility have been honored instead of being forced into community placement. There is no evidence that the Defendants are seeking to expel from state facilities those Plaintiff-residents who chose such placements.

In light of the closure of the Altoona Center, the Plaintiffs sought to prevent the placement of the Plaintiff-residents in community-based treatment facilities because they viewed such placements as contrary to their personal wishes, as well as their medical needs and personal rights. In effect, the Plaintiffs conceded the Altoona Center's closure when they agreed to placements of the Plaintiff - residents after completion of individual ISPs and the decision-makers' ratification of a placement consistent with the ISPs. Nevertheless, the Plaintiffs assert that the injunctive and declaratory relief they sought concerned their transfer from the Altoona Center *and any subsequent transfer*. Defendant's Brief in Opposition (Document No. 106), p. 3. The Court does not find a request for such relief within the Complaint.

As acknowledged in the Complaint, the Plaintiffs feared the closure of Altoona Center would involuntarily force them into community-based facilities for their future care against the will of the Plaintiffs and contrary to or in the absence of any ISPs that outline the objective medical needs and the level of integration the Plaintiff-residents enjoyed at the Altoona Center. Ultimately, the Plaintiffs feared placements of Plaintiff-residents into community-based treatment facilities could result in

8

physical injury or death. The Plaintiffs never alleged a continuing policy (official or unofficial) by the Defendants that intended to expel the Plaintiff-residents from the Altoona Center or any state-operated ICF/MR facility. Additionally, the Defendants cannot efface the fact that ISPs were completed for each of the Plaintiff-residents or that their decision-makers chose the facility in which they were placed. The imminent closure of the Altoona Center is a situation that no longer exists and therefore cannot impact the Plaintiffs' rights.

Finally, all transfers of Plaintiff-residents to community-based treatment facilities have clearly mooted their respective claims concerning violation of their rights in such transfers as alleged in the Complaint. Transfer of all remaining Plaintiff-residents to state-operated ICF/MR facilities were made consistent with the ISPs and the wishes of the Plaintiff-residents' decision-makers. No concern for abuse of the Plaintiff-residents placed at the Ebensburg Center has been raised despite the fact that the Complaint noted prior suspicion of such abuse. *See* Complaint ¶¶ 47, 59. The Plaintiffs have not sought amendment of the Complaint at any time.

It is clear that the circumstances demonstrate that no live controversy exists with respect to the allegations of the Complaint.

## CONCLUSION

While the Court agrees with the Plaintiffs that a community-based facility should not automatically be considered the most integrated type of living arrangement under ADA standards and that institutional care may present a more integrated approach to living based upon the individual circumstances, it is undisputed that the Altoona Center is closed. The Plaintiffs believed it to be the most-integrated facility for their needs and that being forced into community-based care facilities would

9

violate their rights under the ADA and other federal laws. However, those Plaintiff-residents who are now residing in community-based facilities are only there because their ISPs indicated that such a placement was approved for these Plaintiffs and these Plaintiffs consented to those placements through the assent of their guardian or recognized decision-maker. Those who remain in a state-operated ICF/MR placements are there consistent with their respective ISPs and choices of their guardians or decision-makers; they were not forced into community placements contrary to their personal needs and legal rights. With the closure of the Altoona Center, choice of placement by the Plaintiffs and a respect for such choices by the Defendants were the keys to the compromise agreement which was adopted by this Court, thereby obviating the need for a preliminary injunction. The Plaintiff-residents rights' under federal laws remain intact as they did prior to the closure of the Altoona Center. Should closure occur at any of their current residences, and a degradation of personal needs and rights be threatened in a potential subsequent transfer of the Plaintiff-resident, only then can the circumstances of the loss of integration required under the ADA and other federal rights be evaluated properly. The cause at issue in the case *sub judice* was the closure of the Altoona Center and an alleged attempt by the Defendants to disperse the Plaintiff-residents into facilities without their consent, in violation of their rights and contrary to their personal needs. The causes of action did not concern the practices of treatment and evaluation of the Plaintiff-residents by the Defendants, the continued maintenance of a state-wide, state-operated system of ICF/MR facilities or the presence or absence of protocols for every subsequent transfer of residents resulting from a closure of a state-operated ICF/MR facility. Based upon the claims of the Plaintiff, the parties' agreement and the continuing actions of the Defendants in this matter, the cause of action is now moot.

10

The Plaintiffs will be given twenty days to submit a petition for attorney's fees and any written argument in favor of them being deemed a prevailing party in this matter. The Defendants will be given an equal amount of time to respond.

An appropriate Order follows.

AND NOW this 12th day of January, 2009, in accordance with the foregoing Memorandum Opinion IT IS HEREBY ORDERED THAT the Defendants' Motion to Dismiss as Moot is DENIED but their alternative Pre-Discovery Motion for Summary Judgment is GRANTED.

The Plaintiffs shall have until February 2, 2009 to submit a petition in support of any claim for attorney's fees and their status as a prevailing party, with an accounting of the proposed fees; the Defendants shall respond to any such petition on or before February 23, 2009.

The Clerk of Court shall enter judgment in favor of the Defendants against the Plaintiffs in a separate order.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE